SUFFOLK CONSTRUCTION
COMPANY, INC., Plaintiff,

v.

LOCAL 67, UNITED BROTHERHOOD
OF CARPENTERS AND JOINERS OF
AMERICA, AFL–CIO, and Local 7, In-
ternational Association of Bridge,
Structural and Ornamental Ironwork-
ers, AFL–CIO, Defendants.

Civ. A. No. 90–10607–S.

United States District Court,
D. Massachusetts.

March 26, 1990.

Mary L. Marshall and Carol Chandler, Stoneman, Chandler & Miller, Boston, Mass., for Suffolk Const. Co., Inc.

Christopher N. Souris, Feinberg, Feld, Charnas & Schwartz, Boston, Mass., for Local 67, United Broth. of Carpenters and Joiners of America, AFL–CIO.

Thomas Birmingham, Flamm & Birmingham, Boston, Mass., for Local 7, Intern. Ass'n of Bridge, Structural and Ornamental Ironworkers, AFL–CIO.

### RULINGS OF LAW, FINDINGS OF FACT AND ORDER FOR PRELIMINARY INJUNCTION

SKINNER, District Judge.

Suffolk Construction Company filed this action for damages and preliminary injunctive relief against two unions for alleged unfair labor practices. Suffolk is building a new jail in Dedham, Massachusetts. It is an open shop, employing both union and nonunion workers. The defendant unions have no labor contracts with Suffolk or any of its contractors. They are picketing the construction site to persuade Suffolk's contractors and their employees to cease doing business with Suffolk and with Torres Construction Company, one of the subcontractors working on the site. This activity allegedly constitutes an illegal secondary boycott. The picketing has reportedly been violent, with numerous incidents of rock throwing, tire slashing, physical obstruction of traffic and threats directed by union members at workers entering the site.

On March 13, I issued a temporary order restraining the unions and their members from acts of violence, over the defendants' objection that the court lacks jurisdiction to grant injunctive relief. I held that this court had subject matter jurisdiction of the plaintiff's claim under § 303 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 187, and general equitable author-ity in aid of its jurisdiction to enter a temporary restraining order in conformity with the requirements of the Norris–LaGuardia Act, 29 U.S.C. §§ 101–115, which narrows the jurisdiction of federal courts to issue injunctions in labor disputes. The defendants argue that Suffolk has no federal right to an injunction and that Suffolk must enforce its state-created right to equitable relief in a Massachusetts court.

### Federal Claim for Injunctive Relief

■ Section 303 of the Labor Management Relations Act creates a private right of action against any labor organization for damages caused by its unfair labor practices, defined in Section 8(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(b). This court has jurisdiction to entertain such an action under 28 U.S.C. § 1331. The unlawful practices include secondary picketing aimed at making other workers stop work or at forcing an employer to recognize or bargain with a union that is not the employees' collective bargaining agent. The issue is whether, incidental to its subject matter jurisdiction of the claim under § 303, the court is authorized to grant injunctive relief, subject only to the constraints of the Norris–LaGuardia Act.

■ The remedy under § 303 is a narrow exception to the general rule that only the National Labor Relations Board (NLRB) may enforce the NLRA. Since the NLRB is expressly authorized to seek an injunction against unfair labor practices, 29 U.S.C. § 160(*l*), private parties may not seek to enjoin secondary boycotts under Section 303. *Burlington Northern R.R. v. Brotherhood of Maintenance of Way Employes*, 481 U.S. 429, 448, 107 S.Ct. 1841, 1852, 95 L.Ed.2d 381 (1987). Suffolk, however, did not pray that I enjoin the defendants' secondary boycott, and I did not do so. I enjoined their violence.

■ I agree with the defendants that the Norris–LaGuardia Act does not create subject matter jurisdiction, but is rather a limitation on the equitable powers of federal courts. I further agree that § 303 does not specifically authorize equitable relief. Neither, however, does § 301 of the same stat-

ute, (29 U.S.C. § 185), yet the Supreme Court has upheld the issuance of injunctions in suits brought under that section. *E.g., Boys Markets v. Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). Some courts have suggested that there might be a distinction between "suits" authorized by § 301 and the provision in § 303 that a person injured in his property or business by an unfair labor practice may "sue ... and shall recover the damages by him sustained." *E.g., W.L. Mead, Inc. v. International Brotherhood, Etc.*, 125 F.Supp. 331 (D.Mass.1954). I do not find any reliance in *Boys Markets* on the particular phraseology of § 301, however, but rather a recognition of the general equity power of the court in aid of its general jurisdiction, limited only by the Norris–LaGuardia Act. *Cf.* the All Writs Act, 28 U.S.C. § 1651.

The opinion in *Burlington Northern, supra*, seems to me to support the same conclusion. The reversal of the entry of injunctions against secondary boycotts in that case was based on the constraints of the Norris–LaGuardia Act, which the court describes as having "divested" the federal courts of equitable power to enjoin secondary boycotts. 481 U.S. at 437 and 453, 107 S.Ct. at 1846 and 1855. The Norris–LaGuardia Act was enacted in response to the Court's opinion in *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349 (1921), which held that federal courts had general equitable power to enjoin secondary boycotts. 254 U.S. at 471, 41 S.Ct. at 178. I conclude from the Court's discussion of *Duplex Printing Press*, 481 U.S. at 438, 107 S.Ct. at 1847 that there existed a general equitable power in the federal courts to issue injunctions in labor cases which was partially divested by the Norris–LaGuardia Act, leaving only a "nub of jurisdiction" to preserve the peace. *Westinghouse Broadcasting Co., Inc. v. Dukakis*, 412 F.Supp. 580, 584 (D.Mass.1976).

The defendants rely on a dictum in *Burlington Northern* to the effect that the NLRB has exclusive authority to seek injunctions against secondary activity and that employers are not permitted to obtain such injunctions. This broad general proposition was stated in a Railway Labor Act case in which restraint of violence was not an issue. In my opinion this dictum does not require a conclusion that there is no equitable jurisdiction in this case.

I find in the above cited statutes and cases a general policy of keeping federal courts out of the business of issuing injunctions affecting the merits of labor disputes. It seems to me, however that the Norris–LaGuardia Act reflects a policy that such an important aspect of industrial relations as keeping the peace should not be left entirely to state courts. While I recognize that there are cases to the contrary, *e.g., Haspel v. Bonnaz, Singer & Hand Embroiderers, Etc.*, 112 F.Supp. 944 (S.D.N.Y. 1953), I rule that a federal district court has general equitable power to enter injunctions in aid of its jurisdiction in § 303 cases, subject to the constraints of the Norris–LaGuardia Act.

State Claim for Injunctive Relief

■ The amended complaint also alleges violations of the Massachusetts Civil Rights Act, Mass.Gen.L. ch. 12, § 11 *I*, and tortious interference with contractual relationships. Suffolk invokes the court's pendent jurisdiction over the state claims, relying directly on *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In *Gibbs*, the Supreme Court upheld pendent jurisdiction where the plaintiff's state law claim for damages arose from the same events as his Section 303 claim—two days of violence by union protesters. If Suffolk sought only damages, the case would be on all fours with *Gibbs* and pendent jurisdiction would clearly be proper.

The defendants concede that under *Gibbs* the court has constitutional power to grant equitable relief in this case. That is to say, the federal claim is substantial enough to confer jurisdiction, the claims derive from the same nucleus of operative fact, and considered without regard to their state or federal character the plaintiff would ordinarily be expected to try them all in one

proceeding. *Gibbs,* 383 U.S. at 725, 86 S.Ct. at 1138.

■ The exercise of pendent jurisdiction is addressed to the sound discretion of the court. State issues should often be decided in the interest of "judicial economy, convenience and fairness to litigants"; but "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. In this case, it is apparent that the interests of judicial economy, convenience and fairness would be served by resolving all issues in the federal forum. Comity was not threatened by the trial of state claims in *Gibbs* and is no more threatened here. Whatever court heard this matter would be called upon to enjoin violence under state law, and there is no reason that this court should not do so other than the constraints of the Norris–LaGuardia Act.

The fact that the remedy available under state law is broader than the federal remedy is no reason to reject pendent jurisdiction. *See Amoco Oil Co. v. Local 99, International Brotherhood of Electrical Workers,* 536 F.Supp. 1203, 1219–23 (D.R.I. 1982); *Charles D. Bonanno Linen Service, Inc. v. McCarthy,* 532 F.2d 189 (1st Cir.1976), *same case* 708 F.2d 1 (1st Cir. 1983), cert. denied 464 U.S. 936, 104 S.Ct. 346, 78 L.Ed.2d 312.

In short, a preliminary injunction in this case gives Suffolk neither more nor less than it could expect from a Massachusetts court. Surely the touchstone for whether such an order violates federal labor policy is not the identity of the court that issues it. If anything, the interests of federal policy militate in favor of jurisdiction, as in *Gibbs,* because federal law limits the scope of the injunction. As the Supreme Court has stated more than once, the federal courts are especially well suited to decide issues of preemption.

Accordingly, I rule in the alternative that there is pendent jurisdiction over the state law claims in aid of which a preliminary injunction may be issued subject to the constraints of the Norris–LaGuardia Act.

Requirements of the Norris–LaGuardia Act

"The nub of jurisdiction left to the district court seems to be the preservation of the peace. Acts of violence, acts likely to cause violence, and verbal harassment of a non-violent but provocative nature may be enjoined. *E.g., Youngdahl v. Rainfair, Inc.,* 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957)." *Westinghouse Broadcasting Co., Inc., v. Dukakis,* 412 F.Supp. at 584. Specifically, § 7 of the Norris–LaGuardia Act, 29 U.S.C. § 107, requires findings after a hearing that

(a) Unlawful acts have been threatened and committed and will continue to be committed unless restrained;

(b) Substantial and irreparable damage to complainant's property will follow;

(c) Denial of relief will inflict greater injury upon complainant than will be inflicted on defendants by the granting of relief;

(d) Complainant has no adequate remedy at law; and

(e) The police are unable or unwilling to furnish adequate protection.

■ In addition, in the context of this case notice of the hearing must be given to the chief public official of Dedham charged with the duty to protect plaintiff's property. Contrary to the defendants' assertions, the prohibition of § 6 of the Norris–LaGuardia Act, 29 U.S.C. § 106, does not apply to injunctions but only to claims for damages. *Charles D. Bonanno Linen Service, Inc. v. McCarthy,* 532 F.2d 189, 191 (1st Cir.1976).

Findings of Fact

■ I conducted a full evidentiary hearing on March 20, 1990. I find as a fact that members of the defendant unions have engaged in repeated acts of violence at the construction site. They have physically obstructed the passage of vehicles, thrown stones at vehicles, on several occasions breaking glass windows and windshields, spread nails in the road, causing flat tires, spat on vehicles and drivers and otherwise assaulted drivers. They have committed

provocative acts likely to cause violence, such as standing in front of moving vehicles, shouting derogatory epithets and threatening drivers of vehicles with physical injury. In my opinion this conduct is likely to continue unless enjoined. Cessation of violence will represent no hardship whatsoever to the defendants, but continued violence is likely to cause irreparable injury to the plaintiff by reason of damage to its vehicles, injury to its employees and delay in the performance of its contract. There is, moreover a strong public interest in the prompt completion of the Norfolk County Jail and House of Correction in Dedham. Eventual recovery of damages will not be an adequate remedy.

There was no specific evidence of notice to the chief of the Dedham police. However, Lt. Michael Greenwood, the Dedham police responsible for the assignment of police personnel, appeared as a witness and testified that Dedham does not have sufficient officers on regular duty at any one time to maintain a police presence at the construction site during the picketing nor sufficient money in the police budget to pay for overtime for this purpose. I infer from his presence at the hearing that adequate notice was given to the police department; in any case, the purpose of the statute to provide the police with an opportunity to be heard and the court with authentic current information was fully served. This case is distinguishable on that ground from *Green v. Obergfell*, 121 F.2d 46, 53 (D.C. Cir.1941), cert. denied 314 U.S. 637, 62 S.Ct. 72, 86 L.Ed. 511 (1941). Plaintiff is currently paying for private details of off-duty policemen at the rate of $23 per hour per man. While the police presence is maintained at the site, violence is substantially reduced but not eliminated. I do not consider these off-duty police to be public officers within the meaning of the Norris–LaGuardia Act. Accordingly, I find that the public officers charged with the duty to protect the plaintiff's property are unable or unwilling to furnish adequate protection.

Conclusion

I rule that this court has jurisdiction to issue a preliminary injunction, subject to the constraints of the Norris–LaGuardia Act. I find that the evidence warrants the issuance of a preliminary injunction and that it should issue in aid of the public policy to prevent violence in labor disputes. Accordingly, a preliminary injunction shall issue forthwith.